# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **PHILIP GONZALES** § | |
| *Plaintiff,* § | |
| § | |
| V. § | **CIVIL ACTION NO.5:25-cv-00808** |
| § | |
| **THE CITY OF SAN ANTONIO** § | |
| **BY AND THROUGH ITS AGENT** § | |
| **THE SAN ANTONIO FIRE** § | |
| **DEPARTMENT** § | |
| *Defendant.* § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF, **PHILIP GONZALES** ("Plaintiff" or "Gonzales"), complaining of DEFENDANT, **THE CITY OF SAN ANTONIO BY AND THROUGH ITS AGENT THE SAN ANTONIO FIRE DEPARTMENT** ("Defendant" or "SAFD"), and files this Original Complaint and Jury Demand. Plaintiff asserts claims for discrimination, harassment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act as Amended, the Texas Commission on Human Rights Act, and the Rehabilitation Act. Plaintiff further asserts claims for discrimination and retaliation for seeking Worker's Compensation benefits in violation of the Texas Labor Code. In support thereof, Plaintiff would show as follows:

**I.**

1

## PARTIES

1. Plaintiff Philip Gonzales is an individual residing in San Antonio, Texas within the Western District of Texas, San Antonio Division. Has been employed by SAFD in San Antonio, Texas and all relevant events occurred in San Antonio, Texas within this Court's district.

2. Defendant The City of San Antonio by and through its agent the San Antonio Fire Department, is a governmental entity conduction operations in the State of Texas in the Western District of Texas, San Antonio Division. Defendant may be served by serving the City Clerk, Debbie Racca Sittre, City Tower 100 W. Houston St. Concourse, San Antonio, Texas 78205.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear the merits of Plaintiff's Title VII and Rehabilitation Act claims due to the federal question raised pursuant to 28 U.S.C. §1331.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under the Texas Commission on Human Rights Act and Texas Labor Code pursuant to 28. U.S.C. §1331.

5. All of the acts alleged herein occurred in San Antonio, Bexar County, Texas, and are within the jurisdiction and district of this Court.

## III.

## MISNOMER/MISIDENTIFICATION

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## RESPONDEAT SUPERIOR

7. Employees involved in this cause of action were, at all times described herein, employees of Defendant and were always acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of *Respondeat Superior*.

## V.
## FACTS

8. Plaintiff Philip Gonzales began working for Defendant as a firefighter on or about August 7, 2000.

9. Gonzales got COVID connected with his job on or about May 14, 2023.

10. On July 13, 2023, Gonzales was seen by Dr. Jeffrey Munoz who diagnosed Gonzales with COVID-19 infection and sequelae. Dr. Munoz indicated that Gonzales needed to be off work until July 31, 2023.

11. The Risk Management office contacted UT health to get them designated as Gonzales' treating provider rather than Dr. Munoz.

12. On July 31, 2023, Gonzales was seen at Next Level Urgent Care. When he saw Dr. Hsu at Next Level Urgent care on 7/31 the doctor said that she wanted to him to undergo an FCE. When he told her that had had undergone an FCE she informed him that she was still sending him back on light duty. Dr. Hsu told him "worker's comp is not great but there are rules we have to follow and it doesn't necessarily mean that I don't think you are sick or I don't think this would be as much beneficial for you but it's just they have guidelines that they will pay for but you have to hang up with how it goes." Gonzales believed that he was only sent to Next level to get a rubber stamp on a return to work

13. Hsu prepared a report on the visit, however on August 1, 2023, the report was amended to remove references to COVID exposure.

14. On or about September 8, 2023, Gonzales was sent a "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits." This was sent by City of San Antonio c/o CCMSI. It stated that there was no medical evidence to show Gonzales had an inability to work.

15. On or about October 16, 2023, Gonzales was seen by his designated Dr., Jan Petrasek. On January 3, 2024, Dr. Petrasek found that as of October 16,

4

2023, Gonzales was not at Maximum Medical Improvement (MMI), but that he expected Gonzales to be at MMI on or about February 16, 2024.

16. On or about January 5, 2024, Tabitha Kowalik sent a supplemental report of injury to TDI stating that Gonzales had returned to work in a full duty capacity for full pay.

17. On or about August 1, 2024, Gonzales was seen by Dr. Petrasek. Petrasek issued a designated doctor examination data report on September 9, 2024. In that report Dr. Petrasek stated that Gonzales had the following conditions connected to his work injury: Long haul COVID; fatigue; brain fog; insomnia, a chronic cough; shortness of breath; heart palpitations; and memory problems. Dr. Petrasek further stated that Gonzales' inability to obtain and retain employment at wages equivalent to the pre-injury wage was a direct result of the compensable injury.

18. On or about August 8, 2024, Plaintiff was seen by the new designated doctor Dr. Cody D. Mead who found that Gonzales had reached clinical Maximum Medical Improvement on August 15, 2023.

19. On or about October 1, 2024, the San Antonio Fire Department changed its leave without pay policy. Under the new policy, the Fire Chief had discretion to give 1 work week or 24-hour shifts worth of leave to an employee. Leave without pay that exceeds that amount that to be approved by the City Manager.

20. The effect of this policy was to change an unauthorized absence from a disciplinary action, which would entitle the individual to rights under the government code including a hearing, to an administrative resignation. As a result employees no longer had civil service appeal rights and the termination was treated as a voluntary resignation. Additionally there could be other consequences such as the employee losing the ability to contest benefits or receive payouts.

21. Furthermore, the burden of proof under the disciplinary rules shifted from the City having to prove a violation to the employee having to prove the absence was excused.

22. On October 3, 2024, Gonzales saw Dr. Petrasek who found that Gonzales was not at MMI yet but that he was expected to be at MMI on or about January 3, 2025.

23. Gonzales sent the Fire Chief a letter asking for an extension of leave as Gonzales had improperly been found to have exhausted all leave as of November 22, 2024. Gonzales went on to state that he believed the new leave without pay policy was discriminatory against employees like himself who used worker's compensation benefits.

24. Gonzales also sent a letter to Renee Tudyk in the City of San Antonio Human Resources Department stating that he had had an injury in the line of duty, but that Gonzales had been improperly denied income benefits related to the injury.

Gonzales requested disability accommodations in the form of a bona fide offer of employment that would allow him to return to work in a modified duty position.

25. On March 17, 2025, Dr. Petrasek issued a report on a January 30, 2025 examination of Gonzales, and he found that Gonzales had reached clinical MMI on or about August 15, 2024.

26. On April 9, 2025, Rafael Reyes the Division Chief for Professional Standards, sent an email stating that Gonzales had been cleared to return to work full duty as of April 12, 2025.

27. On April 17, 2025, Gonzales' doctor, Jeffrey Munoz, sent correspondence indicating that Gonzales needed to be off work three months.

28. On April 30, 2025, Gonzales sent another letter stating that he believed the April 21, 2025 order to comply with the new request for leave policy was illegal under chapter 143 of the Government Code. Gonzales stated that he believed the policy was a violation of employees' rights both under the ADA and under the Texas Labor code.

29. On May 15, 2025, Christopher Monestier, the Deputy Fire Chief, sent Gonzales a letter. In the letter Monestier states that he had received correspondence from Gonzales on April 30, 2025 and May 8, 2025. He also stated that Gonzales was returned to full duty and reported to the Fire Training Academy on April 15, 2025. Monestier goes on to state that he met with Gonzales on April 16 and told

him he needed to provide two things, (1) medical documentation stating that he needed to be off work, either from an in-network workers' comp doctor or his personal physician for a non-work-related injury) and (2) a request for leave without pay in accordance with SAFD's Leave without pay policy.

30. The letter further indicates that Gonzales provided documentation from his personal physician, who was not in network and did not submit a leave without pay request. The letter further states that Chief Reyes directed Gonzales to submit the leave without pay request again on April 21, 2025.

31. It concludes by stating that any absences resulting in leave without pay will be considered unauthorized and two consecutive days of unauthorized absence will be a voluntary resignation.

32. On May 19, 2025, Gonzales sent a letter in response to Monestier. Gonzales contested the facts as set out by Monestier and stated that he believed the Department was not following its own policies regarding workers compensation or disability accommodation.

33. On May 26, 2025 Defendant found that Gonzales had "voluntarily resigned." When Gonzales emailed Defendant regarding what happened, the Deputy Fire Chief Christopher Monestier sent Gonzales an email telling him that he had to comply with the attendance policy and that he refused to do so, leading to his "resignation."

34. Gonzales was sent correspondence indicating that he had "resigned" on May 28, 2025.

35. In addition to pressuring Gonzales to change doctors City of San Antonio wanted Select PT to conduct Gonzales' second Functional Capacity Exam and made appointments for him there without his knowledge or consent. Gonzales had requested that TSAOG conduct his exam.

36. When he didn't appear at the Select PT appointments he had not been told about he was reported as a no-show and non-compliant to TDI.

## VI.
## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT, AS AMENDED AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

37. The evidence will show that:

   a. Plaintiff is perceived as disabled under the ADA and TCHRA (Long COVID and related conditions) and is disabled;

   b. Plaintiff is qualified for his position;

   c. Plaintiff suffered an adverse employment action in that he is not being given accommodation and is treated less favorably in the terms and conditions of his employment. Moreover, the City has interfered with his medical treatment and disregarded medical instructions. The Defendant has failed to accommodate Gonzales and failed to properly engage in the interactive process, and terminated Gonzales' employment; and

   d. The circumstances arising raise an inference of disability discrimination and retaliation. Defendant enacted a policy that would

## VII.
## HARASSMENT BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

38. The evidence will show that:

   a. Plaintiff belongs to a protected group based on disability;

   b. Plaintiff was subject to unwelcome harassment; (pressured to change doctors to one who would clear him, treated with hostility during the meeting on April 15, trying to prevent Gonzales from reporting to the Public Safety Headquarters, trying to get Gonzales to request leave without pay)

   c. The complained-of harassment was based on his disability;

   d. The harassment at issue affected a term, condition, or privilege of employment; and,

   e. The employer knew or should have known about the harassment and failed to take prompt remedial action.

## VIII.
## FAILURE TO ACCOMMODATE A DISABILITY IN AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

39. The evidence will show that:

   a. Plaintiff is a qualified individual with a disability;

   b. The disability and its consequential limitations were known by the employer;

   c. The employer failed to make reasonable accommodations for such known limitations.

10

## IX.
## RETALIATION
## TEX. LABOR CODE §451.001, et seq.

40. Labor Code section 451.001 states that an employer may not discharge, or in any other manner discriminate, against an employee because that employee has filed a workers' compensation claim in good faith. *See* TEX. LAB.CODE ANN. § 451.001; Plaintiff alleges that as a result of the fact that he sought treatment and benefits under the Worker's Compensation Act for an on-the-job injury, Defendant retaliated against Plaintiff.

## X.
## DISCRIMINATION AND RETALIATION UNDER THE REHABILITATION ACT

41. To the extent Defendant receives any federal funds, Plaintiff asserts a claim under the Rehabilitation Act for discrimination.

42. Plaintiff hereby incorporates the preceding paragraphs for all purposes.

43. Plaintiff is an individual with a disability, as defined by the REHABILITATION ACT, as amended, see 29 U.S.C. §705(20).

44. Plaintiff is an individual with a disability, as defined by the REHABILITATION ACT, as amended, see 29 U.S.C. §705(20).

  a. Plaintiff was disabled (actually disabled and/or "regarded as" disabled) due to his Long COVID;

  b. Plaintiff is qualified for his position;

  c. Plaintiff suffered an adverse employment action and retaliation in that

11

      he was treated less favorably as to the terms and conditions of his employment and the City has disregarded medical instructions, treatment and interfered in his treatment, and terminated his employment; and

    d. The circumstances raise an inference of disability discrimination and retaliation.

45. Defendant violated the REHABILITATION ACT 29 U.S.C. §794(a), as amended, by discriminating against Plaintiff because of his disability under any program or activity receiving Federal financial assistance. In doing so, Defendant intentionally and with deliberate indifference to Plaintiff's federally protected rights interfered with his disability and required treatment and retaliated against him.

46. Defendant's discriminatory acts violate 42 U.S.C. §1211 *et. seq.*, as amended, which are incorporated into the REHABILITATION ACT under 29 U.S.C. §794(d).

## XI.
## ATTORNEY'S FEES

47. It was necessary for Plaintiff to retain the services of the undersigned attorney to prosecute this action. Plaintiff is entitled to recover the reasonable and necessary attorney's fees, expert fees and court costs to prosecute this action as authorized under the ADA, TCHRA and Rehabilitation Act. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

    a. Preparation and trial of the claim, in an amount the jury deems reasonable;

    b. Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

    c. An appeal to the 5th Circuit Court of Appeals, in an amount the jury deems reasonable;

    d. Making or responding to an Application for Writ of Certiorari to the Supreme Court of the United States, and attorneys' fees in the event that application for Writ of Certiorari is granted, in an amount the jury deems reasonable; and,

    e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## XII.
## DAMAGES

48. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant:

    a. Lost wages in the past and future and benefits to which he would have been entitled.

    b. Compensatory damages for mental anguish and emotional distress and inconvenience related to the ADA, Rehabilitation Act, and TCHRA claims and all other damages to which he would have been entitled.

    c. All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

    d. All reasonable and necessary costs incurred in pursuit of this suit;

    e. Expert fees as the Court deems appropriate;

    f. Pre and Post judgment interest as allowed by law;

## XIII.
## JURY DEMAND

49. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon a final hearing hereof, a judgment be rendered for Plaintiff and against the Defendant, for the actual damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, pre-judgment interest, post-judgment interest, liquidated damages, and for such other and further relief to which Plaintiff may be justly entitled.

**Respectfully Submitted,**

/s/ *Alan Braun*
**Adam Poncio**
**State Bar No. 16109800**
aponcio@ponciolaw.com
**Alan Braun**
**State Bar No. 24054488**
abraun@ponciolaw.com

**PONCIO LAW OFFICES**
**A Professional Corporation**
5410 Fredericksburg Rd., Suite 310
San Antonio, Texas  78229
Telephone: (210) 212-7979
Facsimile:   (210) 212-5880

**ATTORNEYS FOR PLAINTIFF**

Case 5:25-cv-00808-JKP-HJB    Document 1    Filed 07/14/25    Page 15 of 15